## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

ODOURI L. LYTES,                    )    CIVIL ACTION NO. 9:16-2789-MGL-BM
#282918,                            )
                                    )
                    Petitioner,     )
                                    )
v.                                  )    **REPORT AND RECOMMENDATION**
                                    )
SCOTT LEWIS, WARDEN,                )
                                    )
                    Respondent.     )
_____     )

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on August 5, 2016.[1]

The Respondent filed a return and motion for summary judgment on November 21, 2016. As the Petitioner is proceeding pro se, a Roseboro order was entered on November 22, 2016, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case.

On January 11, 2017, after no response from the Petitioner was filed, the undersigned entered a Report and Recommendation recommending dismissal of the action due to Petitioner's failure to prosecute his case. However, after Petitioner subsequently filed a memorandum in opposition on January 17, 2017, the Honorable Mary G. Lewis, United States District Judge, vacated the Report and Recommendation and remanded the matter to the undersigned for further proceedings.

---

[1]Filing date per Houston v. Lack, 487 U.S. 266 (1988).



1

This matter is now before the Court for disposition.[2]

## Procedural History

The record reflects that Petitioner was indicted in Edgefield County in December 2007 for trafficking crack cocaine, greater than 28 grams but less than 100 grams [Indictment No. 07-GS-19-753]. (R.pp. 438-439). Petitioner was represented by James R. Snell, Esquire, and following a jury trial on August 11-12, 2009, was found guilty as charged. (R.pp. 1-351). The charge was considered Petitioner's third offense based on his prior record, which under state law subjected him to an increased sentencing range. S.C. Code Ann. § 44-53-375 (C)(2)(c). (R.pp. 352-355). Defense counsel requested that as part of sentencing an outstanding probation matter also be heard regarding a separate malicious injury to person property conviction. (R.pp. 355-356). Petitioner was then sentenced to twenty-five (25) years imprisonment, and his probation was terminated. (R.pp. 359-360).

Petitioner filed a timely appeal in which he was represented by Wanda H. Carter, Esquire, of the South Carolina Commission on Indigent Defense. Petitioner's counsel filed an Anders[3] brief seeking to be relieved and raising the following issue:

**Ground One:** The trial court erred in denying [Petitioner's] Batson motion made after

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c) and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]Anders v. California, 386 U.S. 738 (1967). Anders requires that appointed counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that arguably could support an appeal; a copy of that brief must be furnished to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct an independent and complete examination of the proceedings to determine if further review is merited. See Anders, 386 U.S. at 744.



the solicitor used peremptory challenges in a discriminatory manner because the solicitor's explanation that he struck the four African-American venirepersons in question due to their criminal records did not survive the race-neutral test where a Caucasian venireperson, who had a criminal record also, was not struck by the solicitor and ultimately sat as a juror on the petite jury in the case. [Petitioner] was prejudiced by the solicitor's having struck the venirepersons in question because their prior associations with drugs might have rendered them more sympathetic to [Petitioner's] drug case.

See Court Docket No. 26-3, p. 3.

Petitioner also filed a pro se Anders brief raising the following issues:

**Ground One:** The trial judge erred in denying a dismissal of the case based on Rule 5 and Brady[4] violations clearly the solicitor with held documents for impeachment or cross examination therefore the Appellant was prejudiced as a result;

**Ground Two:** The trial judge erred in denying [Petitioner's] motion for a continuance;

**Ground Three:** The trial judge erred in denying [Petitioner's] motion that the State establish a sufficient chain of custody.[5]

On January 25, 2012, the South Carolina Court of Appeals filed an Order granting counsel's motion to be relieved and dismissing the appeal. State v. Lytes, 2012-UP-011 (S.C.Ct.App. Jan. 25, 2012). See Court Docket No. 26-6. The Petitioner did not seek a rehearing or certiorari to the South Carolina Supreme Court, and the Court of Appeals thereafter issued the Remittitur to the Edgefield County Clerk of Court on February 13, 2012. See Court Docket No. 26-7.

On September 10, 2012, Petitioner filed an application for post-conviction relief ("APCR") in state circuit court. See Lytes v. State of South Carolina, No. 2012-CP-19-296. (R.pp. 362- 382). Respondent construes the Petition as having raised the following issues:

---

[4]Brady v. State of Maryland, 373 U.S. 83 (1963).

[5]A copy of Petitioner's pro se Anders brief does not appear to be in the record. The listing of Petitioner's pro se arguments set forth hereinabove are from Respondent's Brief.



**Ground One:** The trial judge erred in denying a dismissal of the case based on Rule 5 and Brady violations clearly the Solicitor with held documents for impeachment or cross examination therefore the [Petitioner] was prejudiced as a result.

**Ground Two:** The trial judge erred in denying [Petitioner's] motion for a continuance.

**Ground Three:** The trial judge erred in denying [Petitioner's] motion that the state establish a sufficient chain of custody.

**Ground Four:** Trial counsel failed to make objections and preserve these issues for direct appeal.

**Ground Five**: The trial judge erred in denying [Petitioner's] Batson motion . . . .

(R.pp. 366-376).

However, in his memorandum in opposition to summary judgment on his federal habeas petition,

Petitioner contends that the issues raised in his state PCR petition were:[6]

**Ground One:** Ineffective Assistance of Counsel.

(a) Trial counsel failed to make objections and preserve these issues for direct appeal;

(b) "Trial judge erred in denying a dismissal of the case based on Rule 5 and Brady violations";

(c) "Trial judge erred in denying [Petitioner's] motion for a continuance". The continuance was necessary to permit adequate assistance of counsel";

(d) "Trial judge erred in denying [Petitioner's] motion that the state establish a sufficient chain of custody";

(e) "Trial judge erred in denying [Petitioner's] Batson motion made after the solicitor

---

[6]Petitioner's PCR application did not separately list specific grounds for relief, but rather incorporated them into the general discussion in each section. Therefore, the undersigned has listed both parties' interpretations of the issues presented. In any event, any precise difference in the construing of Petitioner's grounds by Respondent does not affect the outcome of this Petition, as any procedural bar applied in this action is based on what was actually pursued in Petitioner's APCR through the issues presented at his evidentiary hearing and as set forth in the PCR court's order, not on the listing of the issues in the PCR petition.



used preemptory challenges in a discriminatory manner".

<u>See</u> Memorandum in Opposition, p. 4 (quotations are indicated as listed in the memorandum).

Petitioner was represented in his APCR by Adam Nelson, Esquire, and an evidentiary hearing was held on Petitioner's application on November 15, 2013. (R.p. 389). At the beginning of the hearing, PCR counsel limited the issues being presented to "allegations of a Brady violation and Rule 5 violation . . . . it sounds both prosecutorial misconduct and somewhat ineffective assistance of counsel." (R.pp. 392-393, 427). At the conclusion of the hearing, the PCR judge denied relief and requested a proposed order from the State. (R.pp. 425-427). Thereafter, in a written order dated May 19, 2014 (filed May 29, 2014), the PCR judge denied relief on the APCR in its entirety. (R.pp. 429-437). Although the evidentiary hearing was limited to discovery violations and related ineffective assistance of counsel claims, the PCR judge also ruled on the allegation that counsel was ineffective for failing to move to suppress the drugs at issue based on a deficient chain of custody, denying that claim on the merits. As to any remaining claims, the PCR judge found that Petitioner had abandoned those claims at the hearing. (R.p. 436).

Petitioner filed a timely appeal of the PCR court's order. Petitioner was represented on appeal by Appellate Defender Lanelle Canty Durant, who filed a <u>Johnson</u>[7] petition, seeking to be relieved and raising the following issue:

> Did the PCR court err in failing to find trial counsel ineffective for not asking for a continuance to discuss a strategy with Petitioner Lytes after it was disclosed during the <u>Jackson v. Denno</u>[8] for the first time that Lytes had claimed full ownership of the drugs in question?

---

[7]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1998); <u>see also</u> <u>Anders v. California</u>, <u>supra</u>.

[8]<u>Jackson v. Denno</u>, 378 U.S. 368 (1964).

5



See Petition, p. 2 (Court Docket No. 26-8).

Although Petitioner was advised of his right to file a pro se response to the Petition, Petitioner did not submit a pro se response. See Court Docket No. 26-9. On March 25, 2016, the Supreme Court of South Carolina denied the petition for writ of certiorari and granted counsel's withdrawal request. See Court Docket No. 26-10. See Lytes, Petitioner, v. State of South Carolina, Appellate Case No. 2014-001292, Order (S.C. March 25, 2016) (Court Docket No. 26-10). The Remittitur was sent down on April 12, 2016. See Court Docket No. 26-11.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

**Ground One:** Prosecutorial Misconduct (Due Process Violation)

**Ground Two:** Ineffective Assistance of Counsel (Sixth Amendment Violation).

**Ground Three:** Violation of Equal Protection (14th Amendment).

See Petition, pp. 5-6, 8.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the



existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review of the record and the arguments of the parties, the undersigned finds for the reasons set forth hereinbelow that the Respondent is entitled to summary judgment in this case.

**I.**

In Ground One of his Petition, Petitioner contends that prosecutorial misconduct occurred where the State failed to disclose a key witness (the C.I.) until the eve of trial, that the trial judge should have granted a continuance due to this failure to disclose, and that counsel should have contemporaneously objected to the C.I.'s testimony during the trial.  Petitioner also contends that there was prosecutorial misconduct due to the State's failure to disclose earlier to Petitioner's counsel a portion of an oral statement made by the Petitioner to Roosevelt Young, an investigator, and that his counsel was therefore also ineffective for failing to move for a continuance on that basis.

Petitioner raised the claim regarding prosecutorial misconduct (and the related ineffective assistance of counsel claims that are intertwined in Ground One) in his PCR proceedings, where Petitioner had the burden of proving the allegations in his petition.  See Lytes v. State of South Carolina, No. 2012-CP-19-296.  See also Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986).  The PCR Court denied these claims, as did the South Carolina Supreme Court when it denied Petitioner's appeal of his APCR.  See Court Docket No. 26-6.[9]  Therefore, Ground One is properly exhausted for purposes of federal habeas review.

---

[9]These issues would have been preserved for appellate review based on his counsel's filing of a Johnson brief.



In his order, the PCR judge found that: 1) Petitioner's trial counsel testified about his criminal practice and prior experience handling narcotics cases; 2) Petitioner did not testify on his behalf at the PCR hearing; 3) Petitioner's trial counsel could not recall why Petitioner's initial counsel had been relieved in the case; 4) trial counsel testified that he received a copy of the discovery disclosures in this case from Petitioner's first attorney; 5) counsel testified that he sent Petitioner an introductory letter on June 16, 2009; 6) out of an abundance of caution, counsel made certain to apprise Petitioner of the charge and elements of the offense; 7) counsel further filed a motion concerning Petitioner's pre-trial detention and bond; 8) counsel filed his own discovery motions and began his investigation of the case; 9) counsel independently reviewed and evaluated the State's evidence, inspected the actual evidence, and interviewed the arresting officer; 10) counsel noted that he spoke with all of the officers prior to trial that testified during the State's case-in-chief; 11) counsel summarized the State's case as a standard controlled buy police investigation where the police utilized a confidential informant "C.I." to effectuate a narcotics transaction as a buyer;

12) the C.I. wore a wire and was provided marked currency from the police; 13) counsel testified to two specific occasions he met with Petitioner to discuss the case; 14) he could not immediately recall other meetings but stated he may have met with Petitioner on other occasions; 15) counsel stated that he evaluated the C.I.'s redacted statement prior to trial; 16) counsel discussed the matter with the Petitioner during a pre-trial consultation; 17) counsel did not recall whether Petitioner disclosed information regarding the C.I. that would have been helpful to the case; 18) counsel opined that it was indisputable that Petitioner was in the vehicle that was identified in the controlled buy; 19) furthermore, it was also indisputable that Petitioner had made or received a series of phone calls from the C.I. prior to the controlled buy; 20) counsel reviewed the C.I.'s phone records with Petitioner; 21)



Petitioner disclosed the substance of his oral statement to police; 22) in Petitioner's spontaneous statement to police, he exculpated others at the scene; 23) further details of the statement were disclosed during pre-trial motions; 24) counsel asserted the additional details did not constitute a material variance in the substance of the inculpatory statement;

       25) counsel testified that the plea negotiations were unfruitful; 26) the solicitor offered to plead Petitioner to a negotiated sentence of twenty-two (22) years imprisonment; 27) counsel stated that Petitioner was only willing to accept a plea that exposed him to eight (8) years or less of imprisonment; 28) counsel prepared Petitioner's case for trial; 29) counsel asserted that he was fully prepared to effectively try Petitioner's case when the solicitor called it to trial; 30) the solicitor disclosed protective discovery materials regarding the C.I. on the eve of trial; 31) counsel traveled to the solicitor's base of operations, an Airport hanger in Saluda County, to inspect the previously protected discovery materials; 32) counsel stated that he had the opportunity to discuss the matter with Petitioner on the morning of trial; 33) counsel requested a continuance when the State called its case; 34) counsel stated that impeaching the C.I.'s credibility was instrumental to his trial strategy; 35) counsel's motion was ultimately denied but yielded counsel a partial success in a directive from the trial judge to allow counsel any additional time during the course of trial to review the materials;

       36) the PCR court reviewed the testimony presented at the evidentiary hearing, observed the witnesses presented at the hearing, passed upon their credibility, and weighted the testimony accordingly; 37) the PCR court further reviewed the Clerk of Court records regarding the subject convictions, Petitioner's records from the South Carolina Department of Corrections, the application for post-conviction relief, the transcripts and documents from the prior proceedings, and legal argument of counsel; 38) as a matter of general impression, the PCR court found counsel



exhibited competent representation on the matters at issue; 39) the PCR court noted that the solicitor could have disclosed discovery materials to counsel in a more expeditious manner; 40) however, the PCR court placed great emphasis on counsel's detailed testimony concerning his pretrial preparations and trial performance; 41) furthermore, Petitioner's conviction and sentence were supported by overwhelming evidence of his guilt;

42) Petitioner failed to meet his burden to prove the solicitor committed prosecutorial misconduct that resulted in prejudice; 43) counsel made a timely pre-trial motion to suppress evidence related to the C.I. that was protected until the eve of trial; 44) the trial judge noted the proper remedy was to provide counsel the opportunity to request time to review the evidence at issue during the course of the trial; 45) the evidence at issue was not proven to be exculpatory, ergo within the review of Brady[10]; 46) thus, the cognizable matter before the PCR court concerned whether the manner in which the solicitor disclosed the sensitive evidence appertaining to the C.I. materially affected Petitioner's right to a fair trial; 47) Petitioner failed to produce credible evidence that showed the trial judge's remedy was grossly inadequate and thereby constituted an abuse of discretion; 48) furthermore, counsel was properly provided the C.I.'s prior record during the course of the trial;

49) Petitioner failed to prove the incomplete pre-trial disclosure of Petitioner's oral statement to police to counsel constituted a discovery violation; 50) counsel testified that the undisclosed portion of the statement was not material where the police officer had already provided him with the substance of Petitioner's oral statement; 51) the PCR court agreed with counsel and found his testimony on the matter convincing; 52) Petitioner told the police the narcotics did not belong to others at the scene, which readily showed by deduction that he was the culprit; 53)

---

[10]Brady v. Maryland, 373 U.S. 83 (1963).

10



therefore, additional statements as to possession were merely surplusage; 54) counsel's testimony on the matter was credible; 55) in light of counsel's diligent preparations, the additional disclosure did not materially impact counsel's ability to effectuate his valid trial strategy, a piecemeal attack to prove reasonable doubt; 56) furthermore, counsel had discussed the matter with Petitioner;

57) Petitioner made the decision not to tell counsel about the extent of his brief statement to the police; 58) the issue did not warrant a continuance; 59) therefore, those allegations were denied and dismissed; 60) Petitioner's allegation that counsel was ineffective for failing to make a motion to suppress the narcotics based upon a defective chain of custody was without merit; 61) counsel made a timely objection to the admission of the narcotics; 62) regardless, Petitioner failed to make a credible argument that the narcotics were improperly admitted into evidence because of a defective chain of custody; 63) therefore, this allegation was denied and dismissed;

64) except as set forth above, the Petitioner affirmatively abandoned the remaining allegations set forth in his application at the hearing; 65) Petitioner's failure to address these issues at the hearing indicated a voluntary and intentional relinquishment of his right to do so; and 66) therefore, any and all remaining allegations were denied and dismissed. (R.pp. 430-436).

## A.

### (Prosecutorial Misconduct)

With regard to the full disclosure of Petitioner's oral statement at the time of his arrest, Petitioner's trial counsel testified at the PCR hearing that there were two stages of the disclosure of Petitioner's statement. (R.p. 396). Petitioner's counsel testified that prior to the trial he and Petitioner had discussed Petitioner's statement, and that Petitioner told counsel that he had made some statements, basically saying "I had something to do with it". (R.p. 409). Counsel also testified



that there were only two people in the car, and that when Petitioner gave a statement exonerating the other person, that "the only other person it could be is you". (R.p. 414). Petitioner's counsel testified at the PCR hearing that,

> [t]here had always been – my understanding had always been [Petitioner] had always made a statement like – he had been alleged to make a statement something to the effect of, you know, the other person had nothing to do with it. But at the <u>Jackson v. Denno</u> hearing held minutes before trial before, you know, the rest of it began, it was revealed there was a second part of the statement alleged that said not only that but – and the drugs are mine.

(R.p. 396).

In the <u>Jackson v. Denno</u> hearing, Investigator Young testified "[h]e just kept saying she wasn't involved in it. It was all his." (R.p. 129). The record does not reflect that counsel sought a continuance on that basis. Counsel testified at the hearing that when he found out in the <u>Jackson v. Denno</u> hearing about the part of the statement "and the drugs were mine", that it did not change his trial strategy for the remaining part of the trial. (R.p. 410).

With regard to the C.I., trial counsel testified that he found out the day before the trial about the details of the informant. (R.p. 399). Counsel testified that he had asked for the information about the informant before and that he had been told that he would get the information right before trial. (R.p. 400). Counsel testified that he did have the C.I.'s statement prior to that time, but that the C.I.'s identity had been redacted (he believed). (R.pp. 404-405). Even so, Petitioner's counsel testified that his understanding was that the Petitioner "would have known" the C.I.'s identity. (R.p. 405). In fact, Petitioner's counsel confirmed that he believed the C.I. testified that she was familiar with the Petitioner. (R.p. 405). Counsel testified that the same time he got the information about the C.I., he also listened to the audio recording of the alleged transaction between the Petitioner and the



C.I. and received rap sheets and criminal history on the C.I.. (R.p. 400). Counsel testified that he did then ask for a continuance on the basis of having received this information so close to the start of the trial, but his request was denied. (R.p. 401).

To be entitled to relief on a discovery violation claim pursuant to Rule 5 of the South Carolina Rules of Criminal Procedure, Petitioner must show that an item was withheld, the item was material, and that he was prejudiced by the non-disclosure. See State v. Kennerly, 503 S.E.2d 214, 220 (S.C.Ct.App. 1998), aff'd, 524 S.E.2d 827 (S.C. 1999)["The requirements of Rule 5, as opposed to the constitutional dictates of Brady, are judicially created discovery mechanisms for use in criminal proceedings. . . . The definition of "material" for purposes of Rule 5 is the same as the definition used in the Brady context . . . . Once a Rule 5 violation is shown, reversal is required only where the defendant suffered prejudice from the violation."]. To establish prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's conduct was improper and that it prejudicially affected his substantial rights. United States v. Pepke, No. 16-4271, 2016 WL 6575082 at * 1 (4th Cir. Nov. 7, 2017)(citing United States v. Caro, 597 F.3d 608, 624–25 (4th Cir. 2010); see also United States v. Armstrong, 517 U.S. 456, 464 (1996) [noting presumption of regularity accorded prosecutorial decisions]). The State Court found no prosecutal misconduct occurred in this case, and substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149, 157-158 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden



of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531

U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

Here, despite Petitioner's claim of prosecutorial misconduct, there is no evidence in

the record that the Solicitor was aware that Young was going to testify at the Jackson v. Denno

hearing that the oral statement included that Petitioner had said "[i]t was all his."[11]  Further, even

assuming arguendo that the Solicitor was aware that the statement was going to include this other

remark by the Petitioner, Petitioner's counsel testified that it did not change his trial strategy.  (R.p.

410).  Counsel was already aware that Petitioner had basically incriminated himself by saying that

the only other person in the car "wasn't involved", which only left the Petitioner.  Therefore, counsel

was already prepared to conduct the trial with knowledge of this issue and Petitioner has therefore

failed to show how any failure to more fully disclose what Petitioner's statement has prejudiced him

in any way.  Smith v State of North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the

burden of proving his allegations when seeking a writ of habeas corpus.].

To the extent that Petitioner is alleging prosecutorial misconduct due to the

prosecutor's failure to disclose the C.I.'s identity sooner, Petitioner has not shown that the Solicitor

acted improperly in not doing so, nor has he shown any prejudice with regard to counsel finding out

the C.I.'s identity the day before trial.  In fact, counsel believed Petitioner knew the C.I., and the C.I.

testified that she knew Petitioner personally.  (R.p. 274).  To the extent Petitioner is alleging that his

counsel could have challenged the C.I.'s credibility more if he had known her record in advance,

---

[11]It is also worth noting that Petitioner has not provided any evidence that he did not actually make this statement.  Therefore, even though Petitioner would have himself been aware of his full statement to Young, he apparently chose not to disclose it to his counsel.



Petitioner has not presented any evidence to support this contention. The record shows that at trial, Antoinette Thomas (the C.I.) testified that she had a conviction for fraud and swindling involving running migrant camps from 1997 and a petit larceny for stealing a mango. (R.p. 261). Thomas further testified that prior to October 24, 2007, Investigator Young executed a search warrant at her residence and found some crack and a little marijuana, but that as of the date of the trial, she had not been charged as a result of the execution of that search warrant. (R.p. 261). In lieu of being charged, Thomas testified that she agreed to assist Young in finding other people who were selling crack cocaine. (R.p. 262). Thomas testified that she contacted the Petitioner on the morning of October 24, 2007, about purchasing crack cocaine and he called her back later to confirm that he had it and could deliver it to her. (R.pp. 262-263). Thomas testified that she knew the Petitioner by his nickname "Gravy." (R.p. 271). When she made the initial phone call to Petitioner, Young and two other officers were present. (R.p. 263). Thomas also testified that she had worked with Young on a number of cases since that time as an informant. (R.p. 270).

On cross-examination, Thomas testified that she guessed she could say that back during 2007, she was fairly involved in the local drug community and knew a lot of the drug dealers/people and that she was selling drugs. (R.pp. 272-273). Thomas testified that when she was caught with the drugs at her residence that she had over 28 grams, which was enough to be charged with trafficking in crack. (R.p. 273). Thomas also admitted that it was her belief or hope that her testimony at trial and cooperation in the case was going to make things go easier for her. (R.p. 273). Thomas testified that she knew the Petitioner personally, and that she had also helped Agent Perry with 4 or 5 cases after July 2007 (when drugs had been discovered in her residence by the authorities). (R.pp. 274-275). Petitioner has offered no further incriminating evidence that could

15



have been introduced if his counsel had received information on Thomas earlier, nor has he shown that any earlier disclosure would have affected the outcome of his trial.

In sum, Petitioner has not shown that he was prejudiced by the prosecutor's actions in this case, nor has he shown that the state court's rejection of this claim was unreasonable. <u>Evans</u>, 200 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Bell</u>, 236 F.3d at 157-158l; <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus.]. Therefore, Petitioner's prosecutorial misconduct claim in Ground One is without merit and should be dismissed.

## B.

### (Ineffective Assistance of Counsel)

Petitioner also contends in Ground One that his counsel was ineffective for failing to move for a continuance after Young's full statement was disclosed in the pretrial hearing, and failing to make a contemporaneous objection to the C.I. as a witness.

The state court found no ineffective assistance on the part of trial counsel. However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. <u>Strickland v. Washington</u>, 466 U.S. 668, 698 (1984); <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993), <u>cert</u>. <u>denied</u>, 114 S.Ct. 487 (1993) (citing <u>Clozza v. Murray</u>, 913 F.2d. 1092, 1100 (4th Cir. 1990), <u>cert</u>. <u>denied</u>, 499 U.S. 913 (1991)). Nevertheless, since Petitioner's ineffective assistance of counsel



claims in Ground One were adjudicated on the merits by the South Carolina state court[12], this Court's

review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted

by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362.  <u>See</u> <u>Bell v. Jarvis</u>, <u>supra</u>; <u>see also</u> <u>Evans</u>,

220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a

claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established federal

law, as determined by the Supreme Court of the United States", or "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding"].  As noted by the Supreme Court, the

> AEDPA's standard is intentionally " ' "difficult to meet." ' " <u>White v. Woodall</u>, 572
> U.S. ___, 134 S.Ct. 1697, 1702 (2014) (quoting <u>Metrish v. Lancaster</u>, 569 U.S. ___,
> 133 S.Ct. 1781, 1786 (2013)). We have explained that " 'clearly established Federal
> law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta,
> of this Court's decisions." <u>White</u>, 572 U.S., at ___, 134 S.Ct., at 1702 (some internal
> quotation marks omitted). "And an 'unreasonable application of' those holdings must
> be objectively unreasonable, not merely wrong; even clear error will not suffice." <u>Id.</u>,
> at ___, 134 S.Ct., at 1702 (same). To satisfy this high bar, a habeas petitioner is
> required to "show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded disagreement."
> <u>Harrington v. Richter</u>, 562 U.S. 86 (2011).
>
> Adherence to these principles serves important interests of federalism and comity.
> AEDPA's requirements reflect a "presumption that state courts know and follow the
> law." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24(2002) (*per curiam*). When reviewing
> state criminal convictions on collateral review, federal judges are required to afford
> state courts due respect by overturning their decisions only when there could be no
> reasonable dispute that they were wrong. Federal habeas review thus exists as "a
> guard against extreme malfunctions in the state criminal justice systems, not a
> substitute for ordinary error correction through appeal." <u>Harrington</u>, <u>supra</u>, at

---

[12]Petitioner's ineffective assistance claim set forth in Ground Two of this habeas petition was not adjudicated on the merits in state court, and is therefore discussed separately herein.  <u>See</u> discussion, <u>infra</u>.



102–103, 131 S.Ct. 770 (internal quotation marks omitted). This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be " ' "doubly deferential" ' " in order to afford "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. ___, 134 S.Ct. 10, 13 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, ___, 131 S.Ct. 1388, 1403 (2011)).

Woods v. Donald, 135 S.Ct. 1372, 1376 (2015).

Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir. 1996). As discussed hereinbelow, infra, Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

As previously discussed, Petitioner's counsel was aware prior to the pretrial hearing that Petitioner had made a statement exonerating the only other person in the car with him, which



implicated him by default, as well as that Petitioner himself would have been aware of any statements that he had made to Young and chose not to disclose them to his counsel. In any event, the additional comment in the statement (disclosed in the pretrial hearing) did not affect trial counsel's strategy at trial, and Petitioner has offered no evidence to show how an earlier disclosure would have changed the outcome of his trial. The PCR court found trial counsel's testimony credible (R.p. 435), and credibility findings are entitled to great deference by this court in a habeas action. Wilson v. Ozmint, 352 F.3d 847, 858-859 (4th Cir. 2003). As for the C.I.'s testimony, counsel made a motion for continuance with respect to information received about this witness, which was denied. Plaintiff has not shown how his counsel was ineffective for not making a contemporaneous motion to exclude the C.I.'s testimony, and in fact counsel was able to bring out pertinent information about the C.I. on cross-examination.

Petitioner offered no evidence at his PCR hearing, nor does he offer any now or even set forth any specific allegations, as to what his counsel could or would have been able to do differently if these matters had been disclosed sooner, or which would have changed the outcome of his trial. Nor has he shown prejudice from his counsel's actions. Therefore, Petitioner has not shown that the findings and rulings of the state courts were unreasonable, or that his counsel was ineffective. Evans, 220 F.3d at 312; Williams v. Taylor, supra; Strickland v. Washington, supra.; Greene v. Fisher, 132 S.Ct. 38, 43 (2011)[observing that AEDPA's "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is difficult to meet, because [its purpose] is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems', and not as a means of error correction"]. Ground One of the Petition should therefore be dismissed.



## II.

Petitioner argues that Ground Two (allegation of ineffective assistance of counsel) and Ground Three (violation of equal protection - 14th Amendment) of his Petition should be treated together, asserting that counsel was unprepared and/or inexperienced in preparation for his sentencing. See Court Docket No. 18-1, pp. 19-20. Petitioner specifically contends that his counsel failed to seek a reduction in sentencing based upon the 2010 Fair Sentencing Act that reduced sentencing exposure in cocaine convictions. See Court Docket No. 18-1, p. 20. Although this federal law was not even in effect at the time of Petitioner's sentencing [see discussion, infra], Petitioner appears to assert that his counsel should have made the same type of underlying arguments which eventually resulted in the passage of this federal law.

Petitioner admits that he did not present these claims in state court, and Respondent contends that Grounds Two and Three are procedurally barred from consideration by this Court. The undersigned agrees. At his PCR hearing, the Petitioner did not list these issues as being among the issues he was pursuing, he did not present any testimony or evidence on these issues, nor did the PCR court rule on these issues in its order denying his APCR. (R.pp. 391-437). Even if Petitioner had intended to assert these claims, his failure to file a motion to reconsider requesting the PCR Court to specifically address these issues constitutes a default of these claims. See Cudd v. Ozmint, No. 08-2421, 2009 WL 3157305 at * 3 (D.S.C. Sept. 25, 2009)[Finding that where Petitioner attempted to raise an issue in his PCR appeal, the issue was procedurally barred where the PCR court had not ruled on the issue and Petitioner did not file a motion to alter or amend to request a ruling in regard to the issue]. Therefore, these claims were procedurally barred from consideration on appeal under South Carolina law. Additionally, since Petitioner also did not raise these issues in his PCR appeal,

20



and since no evidence was presented on them in his PCR proceeding, they would not have been reviewed by the Appellate Court as part of its review of his counsel's <u>Johnson</u> petition.  <u>See</u> Court Docket Nos. 26-8 and 26-9.  <u>Cf</u>. <u>White v. Burtt</u>, No. 06-906, 2007 WL 709001 at *1 & *8 (D.S.C. Mar. 5, 2007)(citing <u>Pruitt v. State</u>, 423 S.E.2d 127, 127-128 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]); <u>cf.</u> <u>Miller v. Padula</u>, No. 07-3149, 2008 WL 1826495 at **1-2 & **9-10 (D.S.C. Apr. 23, 2008).

Because Petitioner did not properly raise and preserve Grounds Two and Three in his APCR and state court proceedings, they are barred from further state collateral review; <u>Whiteley v. Warden, Wyo. State Penitentiary</u>, 401 U.S. 560, 562 n. 3 (1971); <u>Wicker v. State</u>, 425 S.E.2d 25 (S.C. 1992); <u>Ingram v. State of S.C.</u>, No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); <u>Josey v. Rushton</u>, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); <u>Aice v. State</u>, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue these issues, they are fully exhausted.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 735, n.1 (1991); <u>Teague v. Lane</u>, 489 U.S. 288, 297-298 (1989); <u>George v. Angelone</u>, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], <u>cert.</u> <u>denied</u>, 117 S.Ct. 854 (1997); <u>Aice</u>, 409 S.E.2d at 393; <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], <u>cert.</u> <u>denied</u>, 522 U.S. 833



(1997); Ingram, 1998 WL 726757 at **1.

However, even though otherwise exhausted, because these issues were not *properly* pursued and exhausted by the Petitioner in the state courts through the final level of state court review, federal habeas review of these claims is now precluded absent a showing of cause and prejudice, or actual innocence. Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309, 1316 (2012); Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

In this case, Petitioner argues as "cause" in his Petition and attachments for failing to raise these claims, that his PCR counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel on this issue or an Equal Protection argument to properly preserve these issues in his PCR proceedings.

The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." Murray, 477 U.S. at 488; see also Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v. Barnett, 24 F.3d 582, 586, n.4 (4th Cir. 1994)["[C]onstitutionally ineffective assistance of counsel is cause per se in the procedural default context"]; Smith v. Dixon,



14 F.3d 956, 973 (4th Cir. 1994)(en banc). However, as noted hereinbelow, Petitioner's Sixth

Amendment right to counsel does not afford him relief on these claims, because while ineffective

assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause"

if it amounts to an independent violation. Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998); Bonin

v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996). Ineffective assistance of *PCR counsel* (as opposed

to trial or direct appeal counsel) does not amount to an independent constitutional violation, and

therefore would not ordinarily constitute "cause" for a procedural default.[13] Murray v. Giarratano,

492 U.S. 1-7, 13 (1989) [O'Connor, J., concurring] [ "[T]here is nothing in the Constitution or the

precedents of [the Supreme] Court that requires a State provide counsel in postconviction

proceedings. A postconviction proceeding is not part of the criminal process itself, but is instead a

civil action designed to overturn a presumptively valid criminal judgment. Nothing in the

Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ]

the States to follow any particular federal model in those proceedings."]; Mackall v. Angelone, 131

F.3d 442, 447-449 (4th Cir. 1997); Ortiz, 149 F.3d at 932; Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.

1994); Lamp v. State of Iowa, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); Parkhurst v. Shillinger, 128

F.3d 1366, 1371 (10th Cir. 1997); Williams v. Chrans, 945 F.2d 926, 932 (7th Cir. 1992); Gilliam

v. Simms, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998).

    However, in Martinez the Supreme Court did carve out a "narrow exception" that

---

  [13]With regard to his Equal Protection argument, Petitioner is arguably also asserting that the cause for failing to preserve that issue at trial was due to ineffective assistance of trial counsel. However, since the undersigned finds no substantial issue of ineffective assistance of trial counsel on Ground Two and no Equal Protection violation, even assuming trial counsel is the alleged cause for the procedural default, Petitioner has not presented evidence to overcome the procedural bar in this case. See discussion, supra.



modified

"the unqualified statement in <u>Coleman</u> that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." <u>Martinez</u>, 566 U.S. at __, 132 S.Ct. at 1315. [F]or three reasons. First, the "right to the effective assistance of counsel at trial is a bedrock principle in our justice system . . . . Indeed, the right to counsel is the foundation for our adversary system." <u>Id.</u> at ___, 132 S.Ct. at 1317.

Second, ineffective assistance of counsel on *direct appellate review* could amount to "cause", excusing a defendant's failure to raise (and thus procedurally defaulting) a constitutional claim. <u>Id.</u> at ___, 132 S.Ct. at 1316, 1317. But States often have good reasons for initially reviewing claims of ineffective assistance of trial counsel during state collateral proceedings rather than on direct appellate review. <u>Id.</u> at ___, 132 S.Ct. at 1317-1318. That is because review of such a claim normally requires a different attorney, because it often "depend[s] on evidence outside the trial record," and because efforts to expand the record on direct appeal may run afoul of "[a]bbreviated deadlines," depriving the new attorney of "adequate time . . . to investigate the ineffective-assistance claim." <u>Id.</u> at ___, 132 S.Ct. at 1318.

Third, where the State consequently channels initial review of this constitutional claim to collateral proceedings, a lawyer's failure to raise an ineffective assistance of counsel claim during initial-review collateral proceedings, could (were <u>Coleman</u> read broadly) deprive a defendant of any review of that claim at all. <u>Martinez</u>, <u>supr a</u> at ___, 132 S.Ct. at 1316.

We consequently read <u>Coleman</u> as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." <u>Martinez</u>, <u>supra</u> at ___, 132 S.Ct. at 1318-1319, 1320-1321.

<u>Trevino v. Thaler</u>, 133 S.Ct. 1911, 1917-1918 (2013); <u>see</u> <u>also</u> <u>Gray v. Pearson</u>, 526 Fed. Appx. 331, 333 (4th Cir. June 7, 2013)["The Supreme Court had previously held in <u>Coleman</u> that because a habeas petitioner has no constitutional right to counsel in state post-conviction proceedings, the ineffectiveness of post-conviction counsel *cannot* establish 'cause' to excuse a procedural default.



Coleman, 501 U.S. at 757. The Court established an exception to that rule in Martinez."] Therefore,

because, under South Carolina law, a claim of ineffective assistance of trial or appellate counsel is

raised in an APCR; cf. State v. Felder, 351 S.E.2d 852 (S.C. 1986); Bryant v. Reynolds, No. 12-1731,

2013 WL 4511242, at * 19 (D.S.C. Aug. 23, 2013); Gray, 526 Fed. Appx. 333; a petitioner's claim

of ineffective assistance of PCR counsel as "cause" for his default may be considered under the

revised standard of Martinez and Trevino.

Even so, under the first requirement of the Martinez exception, the Petitioner must

"demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one,

which is to say that the [petitioner] must demonstrate that the claim has some merit." Gray, 526 Fed.

Appx. at 333. Petitioner has failed to meet this requirement. To alleviate the severe sentencing

disparity between crack and powder cocaine, the Fair Sentencing Act reduced the statutory penalties

for cocaine base offenses. See Fair Sentencing Act of 2010 § 2, Pub. L. No. 111–220, 124 Stat. 2372,

2372 (codified at 21 U.S.C. § 841 (2012)); United States v. Peters, 843 F.3d 572, 575 (4th Cir.

2016). However, this federal sentencing law does not affect a state sentence, as each is an

independent sovereign which has an independent sentencing structure. See generally United States

v. Davis, 906 F.2d 829, 832 (2d Cir. 1990). Accordingly, Petitioner has not shown that a state

sentencing judge would be bound by this federal sentencing law or that it would be applicable to his

state sentencing. Cf. Johnson v. Sec'y Dep't of Corrections, No. 11-2304, 2011 WL 5975822, at *

1 (M.D.Fla. Nov. 29, 2011)[Denying habeas relief for a state court sentencing based on the Fair

Sentencing Act, stating "the changes in federal sentencing law on which he relies do not apply to his

sentence. The federal sentencing laws apply only to defendants convicted of federal crimes and

sentenced in federal court." (Citing Cf. Cummings v. Baker, 130 Fed. Appx. 446, 447–49 (11th



Cir.2005)].

Moreover, the more lenient penalties of the Fair Sentencing Act, which reduced the crack-to-powder cocaine disparity, applied to those offenders whose crimes preceded the effective date of the Act, but who were sentenced after that date. Dorsey v. United States, 132 S. Ct. 2321, 2331-2332 (2012). The Fair Sentencing Act does not apply retroactively to defendants who were sentenced before its effective date of August 3, 2010. See United States v. Black, 737 F.3d 280, 285–87 (4th Cir. 2013); United States v. Nickens, No. 15-7967, 2016 WL 4245440, at *1 (4th Cir. Aug. 11, 2016). Therefore, since Petitioner was sentenced almost a year prior to the effective date of the Act[14], Petitioner would not be entitled to its applicability even assuming arguendo that it was applicable to his state sentence. Accordingly, with regard to counsel's failure to raise the issue of sentencing with regard to the federal sentencing act or to present the underlying supportive reasons for the federal sentencing act to the state sentencing judge, Petitioner has failed to show a substantial claim.

With regard to Petitioner's Equal Protection argument, "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Petitioner has not shown any type of due process violation, as he has offered no evidence that any other state convicted offender has received the benefit of the Federal Sentencing Act. Further, as previously discussed, Petitioner has also not shown that any federal convicted defendant who was sentenced during the same time period as Petitioner, prior to the enactment of the Fair

---

[14]Petitioner was sentenced on August 12, 2009.

26



Sentencing Act, would have received its benefit.

In sum, based upon the evidence and the record, Petitioner has failed to show counsel's performance was deficient, the necessary prejudice under <u>Strickland</u>, or any Equal Protection violation. Accordingly, Petitioner has failed to establish that Grounds Two and Three are substantial ones in order to be able to proceed on those claims. <u>Gray</u>, 526 Fed. Appx. at 333. Therefore, Petitioner has failed to show cause for his procedural default on these issues. <u>Rodriguez v. Young</u>, 906 F.2d 1153, 1159 (7th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."].

Finally, cognizable claims of "actual innocence" are extremely rare and must be based on "factual innocence not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998); <u>see also</u> <u>Doe v. Menefee</u>, 391 F.3d 147 (2d Cir. 2004). In this case, Petitioner does not present any evidence or real argument that he is factually innocent. Accordingly, Petitioner has failed to present any new, reliable evidence of any type that was not presented in any of his prior court proceedings which supports his innocence on the criminal charge on which he was found guilty. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995)[to present a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."]; <u>Doe</u>, 391 F.3d at 161 (quoting <u>Schlup</u> for the evidentiary standard required for a court to consider an actual innocence claim). Further, Petitioner has also failed to make any showing that a fundamental miscarriage of justice will occur if these claims are not

27



considered.[15] <u>Wainwright v. Sykes</u>, <u>supra</u>; <u>Murray v. Carrier</u>, 477 U.S. 478 (1986); <u>Rodriguez</u>, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing <u>Murray v. Carrier</u>, 477 U.S. at 496); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 348 (1992); <u>Bolender v. Singletary</u>, 898 F.Supp. 876, 881 (S.D.Fla. 1995).

Therefore, Grounds Two and Three asserted by Petitioner in this habeas petition are procedurally barred from consideration by this Court, and should be dismissed.

<u>**Conclusion**</u>

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 8, 2017
Charleston, South Carolina

---

[15]Petitioner does make a conclusory argument that two white Caucasian defendants in state court have recently been treated more favorably in their unrelated state court trials due to their race. However, Petitioner has made no specific connection between the rulings in his case and the rulings in those cases, nor shown that he is similarly situated to either state Defendant.



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

